MARVIN YANCEY PURYEAR v. RAYMOND EARL COOPER, Minor, W. C. HARRIS, JR., Guardian ad Litem for RAYMOND EARL COOPER and CHARLES DUE COOPER

No. 6810SC278

(Filed 9 October 1968)

**1. Trial § 21— motion for nonsuit — consideration of evidence**

Upon motion to nonsuit, the evidence must be considered in the light most favorable to plaintiff, giving plaintiff the benefit of every fact and inference of fact which is reasonably deducible from the evidence.

**2. Automobiles §§ 73, 94— contributory negligence — equal opportunity to see intervening action of third party**

In an action for personal injuries, plaintiff's evidence tended to show that when defendant's vehicle ran out of gas he parked it partly on the right shoulder of the highway and partly on the hard surface without leaving at least 15 feet upon the main traveled portion of the highway, that there was still space between the right edge of defendant's vehicle and the ditch, that the lights of defendant's vehicle were off, that another vehicle was stopped in front of defendant's vehicle with its lights shining on defendant's vehicle, that plaintiff was standing on the bumper of defendant's vehicle pouring gas into the carburetor, and that a third vehicle struck the rear of defendant's vehicle, resulting in personal injuries to plaintiff. *Held:* Even if plaintiff's evidence is treated as sufficient to support a finding that negligence of defendant in parking his vehicle in violation of G.S. 20-161(a) and G.S. 20-134 was a proximate cause of the collision, the evidence disclosed that plaintiff was contributorily negligent in that he knew the manner in which defendant's vehicle was standing and had equal opportunity reasonably to foresee the intervening action of the driver of the third vehicle; therefore, defendant's motion for nonsuit was properly allowed.

APPEAL by plaintiff from *Hobgood, J.,* 2 March 1968, Civil Session, WAKE County Superior Court.

Civil action for damages on account of personal injuries, resulting from alleged negligence of defendants. At close of plaintiff's evidence, a judgment of involuntary nonsuit was entered. This is assigned as error.

*Yarborough, Blanchard, Tucker & Yarborough by Alexander B. Denson, Attorneys for plaintiff appellant.*

*Holding, Harris, Poe & Cheshire by W. C. Harris, Jr., Attorneys for defendant appellees.*

CAMPBELL, J.

[1] Upon a motion to nonsuit, "(t)he evidence must be considered in the light most favorable to the plaintiffs, giving them the

benefit of the most liberal interpretation of which it is reasonably susceptible." *Wilder v. Harris*, 266 N.C. 82, 145 S.E. 2d 393. The plaintiff is to have the benefit of every fact and inference of fact which is reasonably deducible from the evidence. *Gibbs v. Light Co.*, 268 N.C. 186, 150 S.E. 2d 207. Whether there is legal evidence sufficient for jury consideration is a question of law. *Wilder v. Harris, supra.*

Between the hours of midnight and 2:00 a.m. on 26 July 1964, the defendant Raymond Earl Cooper, the eighteen year old son of the defendant Charles Due Cooper, with permission, was driving his father's 1953 Chevrolet automobile on a rural paved road going north from Wendell towards Lizard Lick. The automobile ran out of gasoline and young Cooper stopped it on the right or easterly side of the road partly on and partly off the hard surface. Young Cooper and his companion Bobby Williams took a gallon jug and started walking towards Lizard Lick. The plaintiff, a twenty-three year old man, was on his way to his home in Wendell from Raleigh. He was riding in an automobile owned and operated by Tommy Dean. The plaintiff and Dean went through Lizard Lick and were headed south towards Wendell when they observed young Cooper, whom they knew, and Williams walking towards Lizard Lick. The plaintiff testified: "We picked them up and they got in the car and we went back up to Lizard Lick. They had a gas can, a gallon jug in their hand and we took them back to Lizard Lick to get some gas and we was bringing them back to the car to put gas in the car. Raymond Cooper asked me would I help him crank his car. I told him yes and they got in the car." After getting the gasoline, the four of them had returned in Dean's car to the Cooper car. On arriving at the Cooper car, the plaintiff observed it "sitting on the — parked on the road, partly on the road and partly off the road. The lights was off the car. . . . And I poured most of the gas into the tank of the car and I told Raymond if we pour some in the carburetor, it might crank quicker. Dean was holding the hood up while I was pouring it in the carburetor and then he hollered, told me to get out of the way, looks like a car is coming by and it might accidently (sic) hit us and I was caught between the car. The following car hit the back and I was caught between the two cars."

The evidence for the plaintiff further reveals that when the four of them were returning with the gasoline in Dean's automobile, the Dean automobile had its bright lights on and was going in a southerly direction. The Cooper automobile was on the easterly side of the road headed in a northerly direction. On arriving at the Cooper automobile, Dean pulled over in front of it and stopped some two or

three feet from the Cooper automobile. The Dean automobile was headed in a southeasterly direction at an angle towards the Cooper vehicle. The right rear of the Dean automobile was out into the road farther than the Cooper automobile so that the lights of the Dean automobile did not shine directly down the highway to the south but were shining at an angle so that they would illuminate the Cooper vehicle and enable the plaintiff "to look and see how to pour the gas in the carburetor", and at the same time not blind a driver approaching from the south. The plaintiff got up on the bumper of the Cooper automobile to pour gas into the carburetor under the hood and young Cooper got in the Cooper vehicle in the driver's seat for the purpose of starting the vehicle. While they were thus occupied, a third automobile approached from the south going in a northerly direction. This automobile ran into the rear of the Cooper vehicle. The plaintiff sustained serious injuries, having both legs broken, and his jaw fractured. The plaintiff testified that after being warned by Dean, he did not have sufficient time to get off of the bumper and away from the Cooper automobile. Dean safely reached the ditch.

The plaintiff's evidence further shows that the Cooper automobile was on the hard surface for at least two feet and that the hard surface portion of the road was not over sixteen feet in width. While the Cooper automobile was partially on the shoulder, there was still space between the right edge of the automobile and the ditch on the right or easterly side of the road.

Plaintiff bases his action upon the alleged negligence of young Cooper in parking and leaving standing the Cooper automobile in violation of G.S. 20-161(a) which provides that no person shall park or leave standing any vehicle upon the paved portion of any highway, outside of a business or residence district, when it is practicable to park or leave the vehicle standing off of the paved or main traveled portion of the highway, and in no event, unless a clear and unobstructed width of not less than fifteen feet upon the main traveled portion of the highway opposite such standing vehicle shall be left for free passage of other vehicles thereon, and G.S. 20-134 which provides that, when a vehicle is parked or stopped upon the highway in the nighttime, it must display a red light visible from a distance of five hundred feet to the rear.

[2]     An analysis of the evidence in the light of the above-mentioned elementary principles discloses that the plaintiff knew the manner in which the Cooper automobile was standing on the highway and had equal if not better opportunity reasonably to foresee the intervening action on the part of the operator of the third automobile.

We think this case is controlled by the doctrines enunciated by Bobbitt, J., in *Basnight v. Wilson*, 245 N.C. 548, 96 S.E. 2d 699, as follows:

"The evidence strongly supports the view that negligence on the part of the operator of the [third] car was the sole proximate cause of the collision. But, apart from that view, if plaintiff's evidence is treated as sufficient to support a finding of negligence on the part of defendants, such uncontradicted evidence suffices to show conclusively that plaintiff, with knowledge of all the facts, was in like manner contributorily negligent. In either event, the judgment of involuntary nonsuit was proper."

To like effect, see *Rowe v. Murphy*, 250 N.C. 627, 109 S.E. 2d 474.

In the trial below, there is no error in law.

Affirmed.

MALLARD, C.J., and MORRIS, J., concur.